**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BILLY GREER,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 23-3396 (JEB)** |
| **BOARD OF TRUSTEES OF THE UNIVERSITY OF THE DISTRICT OF COLUMBIA, *et al.*,** | |
| **Defendants.** | |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Billy Greer began working as a police officer for the University of the District of Columbia nearly three decades ago.  After injuring his toe in 2020, a foot specialist cleared him to return to his job under certain work restrictions.  Believing that those restrictions were incompatible with his essential duties, UDC denied Greer's request for light duty and instructed him to file a worker's-compensation claim.  He submitted such a claim and eventually returned to work . . . only to be terminated for fraudulently filing that claim.  He now brings suit — his second of four similar lawsuits — against the University's Board of Trustees and various individuals, alleging that his firing violated a plethora of laws.  This Court dismissed his first case in March 2024, see Greer v. Bd. of Trs. (Greer I), 2024 WL 894934 (D.D.C. Mar. 1, 2024), and Defendants argue that this one should meet the same fate.  Since Plaintiff has not exhausted his claims as required by the Comprehensive Merit Personnel Act, the Court agrees.

I.      **Background**

A.  Factual Background

At this procedural stage and because Plaintiff is *pro se*, the Court draws the facts from both his Complaint and his Opposition to the Motions to Dismiss and accepts them as true.  See ECF Nos. 1 (Compl.); 13 (Opp.); see also Brown v. Whole Foods Market Group, Inc., 789 F.3d 146, 152 (D.C. Cir. 2015).  It also considers additional facts set forth in the undisputed documents incorporated in the Complaint and attached to the Motions to Dismiss that are integral to his claims.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  Because the facts underlying this action are the same as those underlying his first suit, and an account of such facts appears in its Opinion in Greer I, 2024 WL 894934, at *1–2, the Court will be brief here.

Plaintiff started working as a police officer for UDC in 1989.  See Compl., ¶ 6.  The events giving rise to this litigation began some 30 years later when, on June 7, 2020, he fractured his toe.  Id., ¶¶ 9–12.  Following an emergency-room visit, a foot specialist prescribed him a surgical shoe and 6–8 weeks of light duty, so as to limit his walking and standing.  Id., ¶ 13.  Greer, accordingly, requested a light-duty assignment from the University, but his request was denied.  Id., ¶¶ 14–15.  A UDC employee apparently informed him that before getting light duty, he had to submit a worker's-compensation claim, which he filed the following week with the D.C. Office of Risk Management.  Id., ¶¶ 17–18.

So began a claims process, during which three additional doctors examined Greer.  Id., ¶ 20.  In early July, ORM notified his supervisor, Cerina Smith, that he could return to work with some restrictions.  Id., ¶ 21.  But Smith was not having it.  She responded that the police department was unable to accommodate Plaintiff's work restrictions because his position

"require[d] him to be on patrol and to be able to respond to all emergencies on [the University's] campus."  Id., ¶ 22.  Later that month, ORM denied Greer's worker's-compensation claim, finding that his injury did not "aris[e] out of [or] in the course and scope of [his] employment for [UDC]" and was thus not "compensable."  ECF No. 1-1 (Pl. Exhs.) at 51–52 (ORM Determination).  Plaintiff submitted a rebuttal letter to no avail.  See Compl., ¶ 25.

After some more back-and-forth between Greer and the University, which included an intervention by his D.C. councilmember, he was finally cleared to resume work without any restrictions in August 2020.  Id., ¶¶ 26–28.  He returned without incident for several months, until UDC served him a notice of termination on November 2.  Id., ¶ 30.  The notice indicated that he was being terminated effective December 17 "for falsely filing a worker's compensation claim."  Pl. Exhs. at 22 (Notice of Termination); Compl., ¶ 31.

B.  Procedural Background

The day his termination took effect, Greer appealed it to the D.C. Office of Employee Appeals.  See ECF No. 8-1 at 5–24 (Exh. A, OEA Initial Decision) at 5 (noting timing of appeal).  Almost three years later, in September 2023, an Administrative Law Judge of the OEA issued an Initial Decision upholding the University's decision to terminate Plaintiff.  See OEA Initial Decision at 5–24.  The ALJ concluded that UDC had "met its burden of proving that [he] was guilty of filing a fraudulent claim for workers' compensation," which "provided cause for [it] to remove [him]."  Id. at 16.  The Initial Decision stated that it would "become a final decision" unless a petition for review was filed within 35 days.  Id. at 24.

Exactly 35 days later, Plaintiff filed a Petition for Review with the OEA, arguing, among other things, that the ALJ had ignored evidence that the University violated the District's so-called "90-day rule," see 8-B DCMR § 1502.3 (disciplinary action must be commenced within

90 days after District knew or should have known of performance supporting action), and that the Initial Decision itself violated his due-process rights.  See ECF No. 8-1 at 103–27 (Exh. E, Pet. for Review).  UDC has opposed his Petition, see ECF No. 8-1 at 129–66 (Exh F., District Opp. to Pet. for Review), but the OEA has not yet adjudicated it.

Apparently not keen to wait for a final decision from the OEA, Greer filed this action in November 2023.  See Compl.  His Complaint asserts nine causes of action against the University's Board of Trustees and nine individuals who are "former and current agents/employees" of the University: Marieo Foster, Ronald Culmer, Orlando Treadwell, Certrina Smith, Katharine Bruce, Deborah Sullivan, David Franklin, Ronald Mason, and Alex Bako.  Id. at 5.  His pleading is tricky to decipher but seems to allege "wrongful termination" based on: a violation of the aforementioned 90-day rule (Count I); a violation of his due-process rights (Count II); a "conspir[acy]" and "conceal[ment]" of his due-process rights (Count III); "perjury" on the part of the University (Count IV); a violation of the Due Process Clause of the Fourteenth Amendment (Count V); retaliation (Count VI); UDC's decision to "ignore[] the Douglas factors at the time of its decision to remove" Greer (Count VII); the University's "post-termination Douglas factor assessment" (Count VIII); and "defamation of character, slander and libel" (Count IX).  See Compl. at 15–34 (typeface altered); see also Douglas v. Veterans Admin., 5 M.S.P.R. 280, 304–08 (1981) (listing criteria for supervisors to consider in determining appropriate penalty for employee misconduct).  Plaintiff's Opposition seems to try to advance four additional claims (more on those later).  See Opp., ¶¶ 27–30.

As Plaintiff is proceeding pro se and in forma pauperis, the Court ordered the U.S. Marshals Service to effect service of process on Defendants.  See Minute Order of Dec. 14, 2023.  According to the individual Defendants, USMS has failed to effect proper service in the

4

months since.  <u>See</u> ECF No. 9 (Individuals' MTD) at 3–5.  Those Defendants, accordingly, move

to dismiss for improper service.  <u>Id.</u>  Whatever the validity of their improper-service allegations,

the Court believes that it would be unduly harsh to penalize Plaintiff for what may well be

failings attributable to USMS, particularly when the Court was the one to direct the manner of

service.  The Court will accordingly examine only whether dismissal is warranted on the bases

set forth in UDC's Motion to Dismiss, <u>see</u> ECF No. 8 (University MTD), or others appropriately

considered under 28 U.S.C. § 1915(e)(2) (permitting court to dismiss *pro se* case *sua sponte*

where appropriate).

## II.       Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a Court to dismiss any count of a

complaint that fails "to state a claim upon which relief can be granted."  At the motion-to-

dismiss stage, the factual allegations presented in a complaint must be presumed true and should

be liberally construed in the plaintiff's favor.  <u>See</u> <u>Browning v. Clinton,</u> 292 F.3d 235, 242 (D.C.

Cir. 2002).  Although pleading rules are "not meant to impose a great burden upon a

plaintiff," <u>Dura Pharms., Inc. v. Broudo,</u> 544 U.S. 336, 347 (2005), and "detailed factual

allegations" are not necessary to withstand a Rule 12(b)(6) motion, <u>Bell Atlantic Corp. v.</u>

<u>Twombly,</u> 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if]

accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal,</u> 556

U.S. 662, 678 (2009) (cleaned up).  Plaintiff must put forth "factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged," and

there must be "more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>

## III.      Analysis

The University offers a laundry list of reasons why Greer's case should be dismissed.

For one, his claims are barred by the Comprehensive Merit Personnel Act, whose administrative remedies he failed to exhaust. <u>See</u> University MTD at 7–12.  For another, his "confused," "rambling," and "excessively long" Complaint does not comport with Rule 8(a)(2). <u>Id.</u> at 5 (citation omitted); <u>see also</u> Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").  Each of his claims is, moreover, facially deficient. <u>See</u> University MTD at 12–21. And if that were not enough, his claims against the individual Defendants are infirm because Greer failed to allege any actionable conduct on the part of those individuals. <u>Id.</u> at 21–22.  The Court need not proceed beyond first base as he is thrown out under the CMPA.

A.  <u>CMPA</u>

The D.C. Council enacted the CMPA, D.C. Code § 1-601.01 <em>et seq.</em>, in 1978 to create a "uniform system of merit personnel administration that would replace a disjointed, decentralized, and inefficient federal framework."  <u>Amobi v. Brown</u>, 2021 WL 3722710, at *4 (D.D.C. Aug. 23, 2021) (cleaned up); <u>see</u> D.C. Code § 1–601.02.  It "provides a remedy for the majority of employment related conflicts that occur between the District of Columbia and its employees." <u>Owens v. Dist. of Columbia</u>, 923 F. Supp. 2d 241, 248 (D.D.C. 2013).  Its provisions cover all manner of employee complaints "arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions."  <u>Lattisaw v. Dist. of Columbia</u>, 905 A.2d 790, 793 (D.C. 2006) (citation omitted).  Indeed, the D.C. Court of Appeals has construed the CMPA as creating "a comprehensive system of administrative review of employer actions" that "address[es] virtually every conceivable personnel issue among the District, its employees, and their unions — with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum."  <u>Dist. of Columbia v. Thompson</u>, 593 A.2d 621, 633–34

(D.C. 1991); see also Robinson v. Dist. of Columbia, 748 A.2d 409, 411 (D.C. 2000) (CMPA establishes "exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind"); Younger v. D.C. Pub. Sch., 60 F. Supp. 3d 130, 139 (D.D.C. 2014) (similar).

As relevant here, the CMPA provides that a District employee displeased with an "adverse action for cause that results in removal" — i.e., termination — may appeal it to the OEA (as Greer did here). See D.C. Code § 1-606.03(a). An ALJ then makes an initial decision whether to uphold, reverse, or modify the action, which becomes final unless the aggrieved employee or the District files a timely petition for review (again, as Plaintiff did here). Id. § 1-606.03(c). When such a petition is filed and the OEA denies it, the initial decision becomes final; conversely, if the OEA grants such a petition, the OEA's subsequent decision represents its final one. Id. Once there is such a final decision from the OEA (and only then), either party may appeal it to D.C. Superior Court, id. § 1-606.03(d), and subsequently to the D.C. Court of Appeals. Id. § 11-721(a)(1); see Sharma v. Dist. of Columbia, 791 F. Supp. 2d 207, 215 (D.D.C. 2011) ("Under the CMPA, an employee must exhaust the applicable administrative procedures before pursuing judicial remedies. Thus, they are required to first bring their challenge to the OEA, and may thereafter appeal any adverse decision to the D.C. Superior Court and thereafter to the District of Columbia Court of Appeals.") (citations omitted).

The University contends that all of the claims in Greer's Complaint are barred because he failed to exhaust them through the "exclusive remedial framework established under the CMPA" — because his petition for review apparently remains pending — and they should therefore be dismissed under Rule 12(b)(6). See University MTD at 8. Plaintiff responds that the CMPA does not cover his claims, and, in any event, the statute presents no "jurisdictional barrier to suit"

in federal court.  See Opp., ¶¶ 39–49.  The Court begins with the issue of whether his claims are

covered before addressing the effect of the CMPA here.

        1.  *Coverage*

To assess CMPA coverage here, the Court must determine: (1) whether Greer is a covered

individual under the statute; and (2) if so, whether his claims fall within its scope.  Sharma, 791

F. Supp. 2d at 215–16.  The first issue is simple: Plaintiff does not seriously contest that he is

covered, see Opp., ¶ 4 (no legal argument on this point), nor could he.  See D.C. Code § 1-

602.01(a) (CMPA applies to "all employees of the District of Columbia government, except the

Chief Judges and Associate Judges of the Superior Court of the District of Columbia and the

District of Columbia Court of Appeals and the nonjudicial personnel of said Courts" with further

exceptions inapplicable here); see also Cohen v. Bd. of Trs. of Univ. of D.C., 311 F. Supp. 3d

242, 255 (D.D.C. 2018) (CMPA covers former UDC employee).  Indeed, Greer followed the

CMPA's procedure to appeal his termination in the first place.

As to the second, Plaintiff contends that because his lawsuit presents "claims under

federal law for violation[s] of due process, discrimination, and retaliation, they are not precluded

by the CMPA."  Opp., ¶ 49.  The University retorts that even his allegedly federal claims are

"premised on allegations within the exclusive remedial scheme of the CMPA."  University MTD

at 10.  Unfortunately for Greer, UDC has it right.  While the CMPA's provisions are not so

expansive as to cover every harmful act occurring in the workplace, see, e.g., Greer I, 2024 WL

894934, at *3–4 (assessing discrimination claims under Americans with Disabilities Act and Age

Discrimination in Employment Act); King v. Kidd, 640 A.2d 656, 664 (D.C. 1993) (concluding

that "allegations of unlawful discrimination" falling "within the jurisdiction of the D.C. Office of

Human Rights" were expressly excluded by regulation from remedial provisions of the CMPA)

(citation omitted); <u>Stockard v. Moss</u>, 706 A.2d 561, 565 n.9 (D.C. 1997) (noting District's concession that assault and battery are not covered by CMPA), courts have found its provisions to encompass the types of claims in the Complaint here.

To start, Greer's causes of action alleging nondiscriminatory wrongful termination under D.C. law are "precisely the type of complaint[s] that the CMPA was designed to handle." <u>Lewis v. Gov't of Dist. of Columbia</u>, 161 F. Supp. 3d 15, 35 (D.D.C. 2015); <u>see</u> <u>Dickerson v. Dist. of Columbia</u>, 70 F. Supp. 3d 311, 322 (D.D.C. 2014) ("The D.C. Court of Appeals has held that a claim for wrongful termination brought by a District employee, like most any other work-related complaint, is subject to preemption by the CMPA."); <u>Lawrence v. Dist. of Columbia</u>, 2019 WL 1101329, at *3–5 (D.D.C. Mar. 8, 2019) (claim that plaintiff terminated in violation of 90-day rule barred by CMPA).  Plaintiff no doubt realizes as much; he himself raised them under the CMPA before the OEA.  <u>See</u> ECF No. 8-1 at 27–49 (Exh. B, Pl. Mot. for Summary Disp.) at 7– 11 (contending UDC violated 90-day rule, as in Count I of Complaint); <u>id.</u> at 11–13 (arguing University violated due process, as in Counts II and V); <u>id.</u> at 13–16 (asserting UDC retaliated against him, as in Count VI); <u>id.</u> at 16–21 (challenging UDC's application of <u>Douglas</u> factors, as in Counts VII and VIII).

Even the counts that Plaintiff pleads as common-law and constitutional ones fall within the general category of personnel matters redressable under CMPA processes.  Start with the former: his claims that Defendants conspired to unlawfully terminate him (Count III), committed perjury by swearing that they never instructed him to file a worker's-compensation claim (Count IV), and defamed him by pushing the narrative that he falsely filed such a claim (Count IX).  These are all "properly categorized as . . . personnel issue[s] under the CMPA, as [they] arise[] out of an employment-related dispute."  <u>Lewis</u>, 161 F. Supp. 3d at 35 (cleaned up); <u>see</u>

University MTD at 9–10 (observing that conspiracy "claim clearly derives from the University's alleged conduct in the handling of Plaintiff's termination").  Indeed, the link between Greer's termination and the allegedly defamatory narrative that he falsely filed a worker's-compensation claim — based on the alleged perjury, as part of the alleged conspiracy — is undeniable: this is why he was fired.  See Lewis, 161 F. Supp. 3d at 35 (defamation claim preempted by CMPA where "link" between personnel grievance and alleged defamation "unmistakable"); see also Dickerson, 70 F. Supp. 3d at 323–24 (CMPA preempts "work-related" defamation and conspiracy claims); Winder v. Erste, 2005 WL 736639, at *11 (D.D.C. Mar. 31, 2005) (same); Holman v. Williams, 436 F. Supp. 2d 68, 76 (D.D.C. 2006) (same for defamation and collecting cases).

Greer's purportedly constitutional claims — i.e., violations of his due-process rights (Counts II and V) — also lie within the CMPA's ambit.  It is well established that "constitutional claims, despite their federal nature, fall within the CMPA jurisdiction when they are essentially state law claims that the plaintiffs construed in a constitutional light so as to seek federal court jurisdiction."  Owens, 923 F. Supp. 2d at 248; cf. Washington v. Dist. of Columbia, 538 F. Supp. 2d 269, 280 n.5 (D.D.C. 2008) ("[E]ven though the plaintiffs dress their defamation claims in constitutional garb, they are effectively indistinguishable from common-law defamation claims in regards to their coverage under the remedies of the CMPA for employment disputes."). "Simply presenting a constitutional claim," accordingly, "is insufficient to exempt plaintiffs from complying with the CMPA procedure."  Owens, 923 F. Supp. 2d at 248; see McManus v. Dist. of Columbia, 530 F. Supp. 2d 46, 79 (D.D.C. 2007) ("Plaintiffs . . . cannot use a constitutional hook to reel their CMPA-precluded claims into this Court."); Hill v. Gray, 28 F. Supp. 3d 47, 55 (D.D.C. 2014) (similar); Washington, 538 F. Supp. 2d at 278 (same where the statutory and

constitutional claims are "premised on the same facts" because "the administrative process" under the CMPA is "fully capable of granting full relief") (cleaned up); cf. Marine Mammal Conservancy, Inc. v. Dep't of Agriculture, 134 F.3d 409, 413 (D.C. Cir. 1998) (litigants cannot "bypass administrative [processes] simply because one or all of their claims are constitutional in nature").

Here, the Court discerns no constitutional claims in Greer's Complaint distinct from his "state law claims . . . construed in a constitutional light." Owens, 923 F. Supp. 2d at 248. He does not, for example, contend that the CMPA's procedures themselves violate the Fifth Amendment's guarantee of due process. See Compl. at 20–24 (alleging only that his termination violated due-process rights); id. at 27–28 (same); cf. Grivnow v. Bowser, 2022 WL 4130838, at *8 (D.D.C. Sept. 12, 2022) (entertaining — and rejecting — challenge to constitutionality of CMPA procedures); Owens, 923 F. Supp. 2d at 250 (same as Grivnow). The CMPA's procedures thus afforded him an avenue for seeking relief on these claims, too.

Plaintiff fails to engage with any of the foregoing caselaw, opting instead to rest on a single citation to Amobi v. Brown, 2021 WL 3722710 (D.D.C. Aug. 23, 2021), and an otherwise unsupported assertion that the CMPA "does not apply." Opp., ¶¶ 39, 49. Amobi, however, lends him no aid. In that case, a former District correctional officer sued his supervisor, alleging that the supervisor vindictively sought his removal. Amobi, 2021 WL 3722710, at *1–2. Following a trial, the supervisor moved for judgment as a matter of law on the ground that the CMPA preempted the plaintiff's claim. Id. at *1. Thus faced with the question of whether the CMPA applies to malicious prosecution of administrative-removal claims, the court concluded that it does. Id. at *8–10.

This Court, similarly, finds that Greer's claims all fall squarely within the bounds of the CMPA. The lingering question is: what consequence?

        2. *Effect*

Many courts in this district have held that "[p]reemption by the CMPA divests the trial court — whether it be the Superior Court or this Court — of subject matter jurisdiction." Holman, 436 F. Supp. 2d at 74; see also e.g., Owens, 923 F. Supp. at 252 (concluding that plaintiff's failure to pursue CMPA remedies meant that "this Court lack[ed] subject matter jurisdiction to review" claim); Jackson v. D.C. Dep't of Health, 2007 WL 1307891, at *2 (D.D.C. May 3, 2007) ("As all of plaintiff's claims are preempted by the CMPA, this Court lacks subject matter jurisdiction over them."); McManus, 530 F. Supp. 2d at 76 (similar); Dickerson, 70 F. Supp. 3d at 320 ("treating the question whether the CMPA preempts plaintiffs' common law claims as implicating the Court's subject matter jurisdiction over these claims" is the "dominant trend"). Neither party here, however, suggests that the CMPA affects the Court's subject-matter jurisdiction. Instead, the University seeks dismissal only under Rule 12(b)(6), see University MTD at 1; ECF No. 19 (University Reply) at 3–4, and Greer urges the Court to conclude that the CMPA poses no jurisdictional obstacle. See Opp., ¶¶ 40–46.

Notwithstanding the many decisions viewing the CMPA's effect as jurisdictional, the Court agrees that its subject-matter jurisdiction is unaffected by that law. As then-Judge Ketanji Brown Jackson ably explained in Amobi, "[T]he CMPA is a law that was enacted by a local legislature, and it is a bedrock principle of federal-court jurisdiction that '[w]ithin constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider . . . and under what conditions[] federal courts can hear them.'" 2021 WL 3722710, at *7 (citation omitted); cf. Workagegnehu v. Washington Metro. Area Transit Auth., 980 F.3d 874, 877 (D.C.

Cir. 2020) (rejecting argument that Virginia worker's-compensation statute deprives federal court of jurisdiction and explaining that "[o]nly Congress may determine a lower federal court's subject matter jurisdiction") (cleaned up).  In a similarly thoughtful analysis, Judge Randolph Moss likewise concluded that "the CMPA does not deprive federal district courts of subject-matter jurisdiction to consider federal due process claims asserted by D.C. government employees," adding that "[n]othing contained in the CMPA purports to limit — or could limit — the[] grants of federal jurisdiction [in 28 U.S.C. § 1331 and 28 U.S.C. § 1343]."  Da 'Vage v. D.C. Hous. Auth., 583 F. Supp. 3d 226, 240 (D.D.C. 2022).  This Court concurs.

But the fact that Greer is right about the jurisdictional effect of the CMPA (or, really, the lack thereof) does not mean that he wins.  It means only that a dismissal under Rule 12(b)(1) is unwarranted; the question of whether dismissal under Rule 12(b)(6) is appropriate remains.  Id. (conclusion that CMPA does not affect subject-matter jurisdiction "does not mean that the CMPA has no bearing on due process claims asserted in federal court by D.C. employees" but "only that the statute relates to the merits of the challenge and does not limit federal jurisdiction"); see Workagegnehu, 980 F.3d at 878 (state law "has no bearing on whether the district court has jurisdiction to adjudicate" plaintiff's claims, but is still "relevant to determine the merits of [such] claims").  The University contends that it is, reasoning that Plaintiff has not stated claims upon which relief can be granted because he failed to comply with the CMPA's exhaustion requirements.  See University Reply at 3–4.

That Greer failed to exhaust his administrative remedies is clear.  The CMPA specifies that "[a]dministrative remedies are considered exhausted when a decision becomes final in accordance with this section," and a decision becomes final under that section when a petition for review — if filed — is either granted or denied.  See D.C. Code § 1-606.03(c).  Yet Plaintiff filed

this suit while his petition for review at the OEA was pending — *viz.*, before there was a final decision from the OEA.  Greer, for his part, neither disputes that he failed to exhaust nor offers any argument why he should not be bound by the District's exhaustion requirement.  See Opp., ¶¶ 40–46 (arguing only that requirement is not jurisdictional).  Nor do his pleadings otherwise contain facts that might lead the Court to find an exception.  Cf. Hill, 28 F. Supp. 3d at 55 (court may recognize exception to CMPA exhaustion if plaintiff makes "clear and positive showing" that exhaustion would be futile because "the prescribed remedy would not provide adequate relief or when the prescribed remedy would certainly result in an adverse decision") (citation omitted).

The only question, then, is whether failure to exhaust the CMPA's remedies calls for dismissal, and the answer is a resounding yes.  See Amobi, 2021 WL 3722710, at *8–11 (dismissing claim covered by CMPA under Rule 12(b)(6) because plaintiff "did not exhaust the CMPA's administrative remedies with respect to [it]," and "permitting [him] to circumvent the CMPA's administrative framework would undermine the purposes of exhaustion"); Washington, 538 F. Supp. 2d at 275 (same and explaining that "failure to satisfy" CMPA's "non-jurisdictional" exhaustion requirement "constitutes a failure to sufficiently plead a necessary element" of claim); Johnson v. Dist. of Columbia, 368 F. Supp. 2d 30, 52 (D.D.C. 2005) (same and reasoning that plaintiff's "failure to allege in her complaint that she has exhausted her administrative remedies . . . constitutes a failure to state claims on which relief may be granted in this Court"), aff'd, 552 F.3d 806 (D.C. Cir. 2008); Payne v. Dist. of Columbia, 592 F. Supp. 2d 29, 40 (D.D.C. 2008) (same).  Indeed, although the D.C. Circuit in Johnson v. District of Columbia declined to decide whether the CMPA's exhaustion requirement is jurisdictional, see 552 F.3d at 811 n.2, it had "no trouble concluding that [the requirement] applie[d]" and that the "district court correctly

14

dismissed [plaintiff's] complaint against the District [under Rule 12(b)(6)] for failure to exhaust her remedies." Id. at 811 n.2, 814.  The Court sees no reason, and Plaintiff offers none, why his claims should not likewise be dismissed under Rule 12(b)(6).

B.  Non-CMPA Claims?

But wait, there is more.  In his Opposition, Plaintiff apparently seeks to assert four more causes of action found nowhere in his Complaint: (1) failure to accommodate a disability under the Americans with Disabilities Act, (2) disparate treatment based on age under the Age Discrimination in Employment Act, (3) disparate treatment based on age and ethnicity under Title VII, and (4) wrongful termination under the ADA.  See Opp., ¶¶ 27–30 (reordering for ease of analysis).  The University retorts that the instant action does not involve alleged violations of any of those statutes.  See University Reply at 4, 5.  That is certainly true based on the Complaint, which says nothing about the ADA, ADEA, or Title VII.  It is unclear, however, whether our Circuit requires district courts to consider new claims (as well as new facts) articulated in a *pro se* opposition to a motion to dismiss.  See Brown, 789 F.3d at 152 (court must "consider a *pro se* litigant's complaint in light of all filings, including filings responsive to a motion to dismiss") (cleaned up).  Assuming that it is so required, the Court will explain why Greer's four new claims cannot proceed.  Cf. 28 U.S.C. § 1915(e)(2)(B)(ii) (the "court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").

Begin with his failure-to-accommodate and disparate-treatment claims under the ADA and ADEA, respectively.  Those are identical to the claims that Greer raised — and this Court dismissed (albeit without prejudice) — in Greer I.  Indeed, if *res judicata* attached to Greer I, the Court would readily conclude that they are barred by that doctrine.  See Perez v. Kipp DC

15

Supporting Corp., 70 F.4th 570, 572 (D.C. Cir. 2023) (dismissal without prejudice has no *res judicata* effect).   Regardless, the claims fall here for the same reason that they fell there: failure to exhaust administrative remedies.   As the Court explained in <u>Greer I</u>, "Before filing a lawsuit under the ADA, Title VII, or ADEA, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the [Equal Employment Opportunity Commission] within 180 days of the alleged unlawful employment practice."   2024 WL 894934, at *3 (citation omitted).   Because the EEOC has a work-sharing agreement with the Washington fair-employment-practices agency, the limitations period is extended to 300 days.   <u>See</u> <u>Carter v. George Washington Univ.</u>, 387 F.3d 872, 879 (D.C. Cir. 2004); <u>Jenkins v. Dist. of Columbia</u>, 2023 WL 4183795, at *5 (D.D.C. June 26, 2023) (noting ongoing work-sharing agreement).   Yet Greer has not alleged — nor attached any documents that would show — that he exhausted his administrative remedies under the ADA or ADEA.   That is unsurprising: this Court found in <u>Greer I</u> that he did not file a charge with the EEOC until September 8, 2021, more than 300 days after the alleged failure-to-accommodate and disparate-treatment incidents, rendering both claims unexhausted.   <u>Greer I</u>, 2024 WL 894934, at *2–4; <u>see also</u> <u>Greer I</u>, No. 23-2296, ECF No. 6-1 at 5 (EEOC Charge).   Nothing has changed in the interim.

Next up: his Title VII claim, alleging that the University "engaged in Desperate [*sic*] Treatment, Age Discrimination, and ethnicity which are a clear violation of Title VII of The Civil Rights Act of 1964 as well of any other term or condition of employment, as it pertains to Officer Brandon M[cC]laney."   Opp., ¶ 28.   Put differently, Greer seems to be asserting disparate treatment in violation of Title VII based on his age and ethnicity, relying on the fact that UDC accommodated Brandon McClaney (a younger officer who had also suffered a foot injury), although Greer never bothers to mention in his pleadings how old he is or what his ethnicity is.

To begin, Title VII does not prohibit discrimination on the basis of age.  See 42 U.S.C. § 2000e-2; Prince v. Rice, 453 F. Supp. 2d 14, 18 n.1 (D.D.C. 2006) ("Title VII does not apply to claims of age discrimination.").  While it does prohibit discrimination on the basis of ethnicity, see Figueroa v. Pompeo, 923 F.3d 1078, 1083 (D.C. Cir. 2019), his ethnicity claim falters on the same hurdle as his ADEA one: failure to exhaust administrative remedies.  The Court explained in Greer I that "[t]he basis for Greer's disparate-treatment claim" under the ADEA was "that in 2019 the University did accommodate a younger officer [McClaney] who had also suffered a foot injury."  Greer I, 2024 WL 894934, at *4.  The basis for his Title VII ethnicity claim here is identical, see Opp., ¶ 28, meaning that his EEOC charge was — once again — too late.  See Greer I, 2024 WL 894934, at *4 (The "alleged violation" forming the basis of this claim "occurred when the University declined to similarly permit Greer's work restrictions — on both June 11 and July 2, 2020," which "precede the September 2021 EEOC charge by more than 300 days.").  In other words, Plaintiff did not timely exhaust administrative remedies.

That leaves his claim of wrongful termination under the ADA.  Because Greer was terminated on December 17, 2020, the EEOC charge that he filed on September 8, 2021 — viz., 265 days later — was timely as to this claim.  See EEOC Charge.  Still, he faces another timeliness problem: he sued too late.  "A plaintiff must commence a civil action under . . . the ADA in a federal court within 90 days after receipt of right-to-sue letter from the EEOC."  Jones v. Cent. Parking Sys., 2006 WL 8445556, at *1 (D.D.C. Feb. 23, 2006); see 42 U.S.C. §§ 2000e-5(f)(1), 12117(a).  As this Court found in Greer I, the EEOC issued such a letter to Plaintiff on May 12, 2023.  Greer I, 2024 WL 894934, at *2; see Greer I, No. 23-2296, ECF No. 1-1 (Pl. Exhs.) at 43–44 (EEOC Notice); see also Jones, 2006 WL 8445556, at *1 ("It is presumed that

the right-to-sue letter was mailed on the same date of its issuance.").  But he did not file the

instant lawsuit until November 13, 2023 — that is, 185 days later, which was 95 days too late.

Greer offers no reasons to apply an exception to the exhaustion requirements of the ADA,

ADEA, or Title VII or to toll the ADA's 90-day limitation.  Nor do any of his pleadings provide a

justification for such an exception or tolling.  In the absence of anything to help his cause, the

Court concludes that the counts set forth in his Opposition are just as deficient as the ones in his

Complaint.  His case shall therefore be dismissed in full — again.

## IV.    Conclusion

For these reasons, the Court will grant the Motions to Dismiss without prejudice.  A

separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  May 8, 2024

18